**Jesus AGUILERA–ENRIQUEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 74–1565.

United States Court of Appeals, Sixth Circuit.

May 7, 1975.

Robert S. Catz (argued), Howard S. Scher (argued), Burton D. Fretz, Alfonso J. Gonzalez, Migrant Legal Action Program, Inc., Washington, D.C., Phyllis A. Reha, Michigan Migrant Legal Assistance Program, Saginaw, Michigan, for petitioner.

Robert Kendall (argued), U.S. Justice Dept., Washington, D.C., William N. Milligan, U.S. Atty., Cincinnati, Ohio, Immigration and Naturalization Service, Cincinnati, Ohio, for respondent.

Before CELEBREZZE and McCREE, Circuit Judges, and DeMASCIO,* District Judge.

CELEBREZZE, Circuit Judge.

Petitioner, Jesus Aguilera-Enriquez, seeks reversal of a deportation order on the ground that he was constitutionally entitled to but was not afforded the assistance of counsel during his deportation hearing. He also claims that the narcotics conviction on which his deportation order is based is not yet final and should not be available as a basis for his expulsion from the United States.

A thirty-nine-year-old native and citizen of Mexico, Petitioner has resided in the United States since December 18, 1967, when he was admitted for permanent residence. He is a married farm worker, living with his wife and three daughters in Saginaw, Michigan.

In December 1971, Petitioner traveled to Mexico for a vacation. An officer of the Saginaw, Michigan Police Department notified federal customs officers at the Mexican border that he had reason to believe that Petitioner would be returning with a quantity of heroin. When Petitioner crossed the border on his return, he was subjected to a search which produced no heroin but did reveal two grams of cocaine.

On April 12, 1972, Petitioner pleaded guilty in the United States District Court for the Western District of Texas, on one count of knowingly possessing a quantity of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 844(a) (1970). Petitioner received a suspended one-year sentence, was placed on probation for five years, and was fined $3,000, to be paid in fifty-dollar monthly installments over the five-year probationary period. Neither Petitioner's appointed counsel nor the District Court informed him that a narcotics conviction would almost certainly lead to his deportation.

On December 7, 1972, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing, charging that because of his narcotics conviction, Petitioner should be deported under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1970).

On February 6, 1973 Petitioner appeared before the Immigration Judge and requested appointed counsel. The Immigration Judge refused this request. After a hearing Petitioner was ordered deported and was not afforded the option of voluntary departure.

---

* Honorable Robert E. DeMascio, U.S. District Judge for the Eastern District of Michigan, sitting by designation.

Shortly after the Immigration Judge's ruling, Petitioner engaged as counsel a Michigan legal assistance attorney, who in turn secured the services of a Texas attorney.

On February 14, 1973, Petitioner filed an appeal to the Board of Immigration Appeals, stating that the validity of the Texas conviction was being challenged.

On May 23, 1973, Petitioner's Texas counsel filed a motion to withdraw his guilty plea under Rule 32(d), F.R.Crim.P. The motion asserted that the District Court had not followed Rule 11 in accepting the plea because it had not properly determined that there was a factual basis for the plea and that the plea was made with a full understanding of the probable consequences.

On February 1, 1974, after full briefing and oral argument by counsel for Petitioner and the Government, the Board of Immigration Appeals dismissed Petitioner's appeal. A petition for review was timely filed in this Court.

The issue Petitioner raises here is whether an indigent alien has the right to appointed counsel in a deportation proceeding. He attacks the constitutional validity of 8 U.S.C. § 1252(b)(2) (1970), which gives an alien facing deportation proceedings "the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." [1] The Immigration Judge held that this section prevented appointment of counsel at Government expense. Since he could not afford to hire a lawyer, he did not have one before the Immigration Judge.

■ The courts have been vigilant to ensure that aliens receive the protections Congress has given them before they may be banished from our shores.

As this Circuit noted in United States ex rel. Brancato v. Lehmann, 239 F.2d 663, 666 (6th Cir. 1956),

> Although it is not penal in character, * * * deportation is a drastic measure, at times the equivalent of banishment or exile, for which reason deportation statutes should be given the narrowest of the several possible meanings.

*See also* Immigration and Naturalization Service v. Errico, 385 U.S. 214, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966); Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); Gastelum-Quinones v. Kennedy, 374 U.S. 469, 479, 83 S.Ct. 1819, 10 L.Ed.2d 1013 (1963). The Supreme Court has held that once an alien has been admitted to lawful residence, "not even Congress may expel him without allowing him a fair opportunity to be heard." Kwong Hai Chew v. Colding, 344 U.S. 590, 598, 73 S.Ct. 472, 478, 97 L.Ed. 576 (1953). Thus, if procedures mandated by Congress do not provide an alien with procedural due process, they must yield, and the constitutional guarantee of due process must provide adequate protection during the deportation process.[2] Yamataya v. Fisher (The Japanese Immigrant Case), 189 U.S. 86, 100, 23 S.Ct. 611, 47 L.Ed. 721 (1903); Wong Yang Sung v. McGrath, 339 U.S. 33, 49–51, 70 S.Ct. 445, 94 L.Ed. 616 modified on rehearing, 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950).

■ The test for whether due process requires the appointment of counsel for an indigent alien is whether, in a given case, the assistance of counsel would be necessary to provide "fundamental fairness—the touchstone of due process." Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973).[3]

1. *See also* 8 U.S.C. § 1362 (1970); 8 C.F.R. § 242.16.

2. *See generally* Grosh, "Immigrants, Aliens, and the Constitution," 49 Notre Dame Lawyer 1075 (1974); Haney, "Deportation and the Right to Counsel," 11 Harv.Int'l L.J. 177 (1970); Gordon, "The Right to Counsel in Im-

migration Proceedings," 45 Minn.L.Rev. 875 (1961).

3. The Supreme Court's holdings in Gagnon, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), have undermined the position that

■ In Petitioner's case the absence of counsel at his hearing before the Immigration Judge did not deprive his deportation proceeding of fundamental fairness.

Petitioner was held to be deportable under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11), which states in relevant part:

(a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

. . . . .

(11) . . . at any time has been convicted of a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs . . . ..

Before the Immigration Judge, Petitioner raised no defense to the charge that he had been convicted in April 1972 of a violation of 21 U.S.C. § 844(a). Thus, he was clearly within the purview of section 241(a)(11) of the Act, and no defense for which a lawyer would have helped the argument was presented to the Immigration Judge for consideration. After the decision of the Immigration Judge, Petitioner moved to withdraw his guilty plea in the Texas District Court under Rule 32(d), F.R.Crim.P. He then urged before the Board of Immigration Appeals that this motion took him outside the reach of section 241(a)(11), because the likelihood of success on that motion meant that he had not been "convicted" of a narcotics offense. He was effectively represented

by counsel before the Board, and his argument was considered upon briefing and oral argument. The lack of counsel before the Immigration Judge did not prevent full administrative consideration of his argument. Counsel could have obtained no different administrative result. "Fundamental fairness," therefore, was not abridged during the administrative proceedings, and the order of deportation is not subject to constitutional attack for a lack of due process. Henriques v. Immigration and Naturalization Service, 465 F.2d 119, 120–21 (2d Cir. 1972); Villanueva-Jurado v. Immigration and Naturalization Service, 482 F.2d 886, 888 (5th Cir. 1973); Sumio Madokoro v. Del Guercio, 160 F.2d 164 (9th Cir. 1947).

We turn, therefore, to Petitioner's second contention—that his conviction on the Texas narcotics charge has not reached the stage of finality required to support deportation under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1970).

That section, as excerpted above, provides for the deportation of any alien who "at any time has been convicted of . . . any law . . . relating to the illicit possession of or traffic in narcotic drugs." [4] Petitioner argues that because he has filed a motion to withdraw his guilty plea under Rule 32(d), F.R.Crim.P., and because that motion is likely to succeed,[5] the conviction by way of judgment and sentence on April 12, 1972 does not mean that he "has been convicted" of a narcotics offense under section 241(a)(11).

counsel must be provided to indigents only in criminal proceedings. Decisions such as Tupacyupanqui-Marin v. Immigration and Naturalization Service, 447 F.2d 603 (7th Cir. 1971), and Murgia-Melendrez v. Immigration and Naturalization Service, 407 F.2d 207 (9th Cir. 1969), which contain dictum appearing to set forth a *per se* rule against providing counsel to indigent aliens facing deportation, rested largely on the outmoded distinction between criminal cases (where the Sixth Amendment guarantees indigents appointed counsel) and civil proceedings (where the Fifth Amendment applies). Where an unrepresented indigent alien would require counsel to present his position adequately to an immigration judge, he must

be provided with a lawyer at the Government's expense. Otherwise, "fundamental fairness" would be violated.

4. The offense to which Petitioner pleaded guilty (possession of cocaine in violation of 21 U.S.C. § 844(1)) is within the ambit of section 241(a)(11). *See* Hoy v. Mendoza-Rivera, 267 F.2d 451, 452 (9th Cir. 1959).

5. His Rule 32(d) motion asserts that the District Court failed to follow Rule 11, F.R. Crim.P., when it accepted his guilty plea because it did not inform him that deportation would result from his plea. He asserts that he was unaware of the probability of deportation when he entered his plea.

█ The definition of "convicted" within section 241(a)(11) is a matter of federal law, to be interpreted in harmony with the policies underlying the Immigration and Nationality Act. Gutierrez-Rubio v. Immigration and Naturalization Service, 453 F.2d 1243 (5th Cir. 1972); Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804, 808–809 (9th Cir.), cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965); Gutierrez v. Immigration and Naturalization Service, 323 F.2d 593, 596 (9th Cir. 1963).

█ The Immigration authorities must look to judicial records to determine whether a person has been "convicted" of a crime. They may not determine on their own an alien's guilt or innocence. Rassano v. Immigration and Naturalization Service, 377 F.2d 971, 974 (7th Cir. 1967); Mylius v. Uhl, 210 F. 860 (2d Cir. 1914). Because judicial records, rather than a de novo review of an alien's guilt, determine whether an alien has been "convicted" of a crime, it is important that a conviction be final before it is used as the basis for a deportation order.

The question of when a conviction is final for deportation purposes has not been extensively litigated. The only Supreme Court guidance in the area involved an alien who had been found guilty of petty larceny in a state court, had waived his right to direct appeal, and had been placed on a one-year probation. Under Massachusetts law, at the end of his probation his sentence was revoked and his case was put "on file." This meant that the judicial determination of guilt remained but that final sentencing was held in abeyance. Instead, an ambulatory form of punishment, including surveillance of the defendant's activities, was imposed, and the District Court retained the right to impose a final sentence. In the event of formal sentencing, the defendant had the right to appeal and to obtain a trial de novo before a jury in Superior Court. The Supreme Court held, in a brief per curiam opinion, that it was "unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of § 241 of the Immigration and Nationality Act." Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955), rev'g Pino v. Nicolls, 215 F.2d 237 (1st Cir. 1954).

█ The Seventh Circuit has interpreted Pino and section 241(a)(11) as requiring "that a final curtain must have been drawn in the criminal proceedings." Will v. Immigration and Naturalization Service, 447 F.2d 529, 532 (7th Cir. 1971). See also Matter of L. R., 8 I. & N. Dec. 269 (1959). We agree with the Seventh Circuit that not only a "conviction" but a sentence and exhaustion of procedures for direct appeal are necessary before an alien "has been convicted" of a narcotics offense under section 241(a)(11). Within the federal judicial system, a person has not been "convicted" of a crime under section 241(a)(11) until a judgment of conviction has been entered and until procedures for a direct appeal have been exhausted or waived.[6]

█ Once these events have occurred, the alien "has been convicted" of an offense for deportation purposes. Post-conviction motions do not operate to negate this conclusion. If one is successful in reversing the judgment and sentence, no conviction will remain to form a basis for deportation.[7] But until a conviction

---

**6.** Rule 32(b), F.R.Crim.P., requires entry of a judgment, setting forth "the plea, the verdict or findings, and the adjudication and sentence." Because Rule 38 requires the stay of a sentence of imprisonment or probation and allows the stay of a sentence "to pay a fine or a fine and costs," a sentence cannot be considered final until a direct appeal has been decided or waived. Until then, "the final curtain" has not been drawn on the criminal proceeding.

**7.** See Cruz-Sanchez v. Immigration and Naturalization Service, 438 F.2d 1087 (7th Cir. 1971); Sawkow v. Immigration and Naturalization Service, 314 F.2d 34 (3d Cir. 1963); United States ex rel. Freislinger v. Smith, 41 F.2d 707 (7th Cir. 1930); Matter of Sirhan, 13

is overturned, it is an adequate basis for a deportation order.

■ Petitioner argues that a motion to withdraw a guilty plea under Rule 32(d) is a "direct" rather than "collateral" attack on its validity, so that his conviction should not yet be considered final. We do not believe that the "direct"—"collateral" distinction is a meaningful dividing line for deportation purposes. A guilty plea waives objection to the Government's pre-trial conduct, as well as the right of direct appeal. It "draws the final curtain" on a criminal proceeding, except for the necessary step of sentencing. Before sentencing, under Rule 32(d), a motion to withdraw a guilty plea can be heard before the judgment of conviction is entered. Once sentencing is completed, however, the conviction is final for deportation purposes. A claim which is made after the entry of judgment to the effect that the guilty plea should not have been accepted is a post-conviction motion, whether it arises through a Rule 32(d) motion or a petition under 28 U.S.C. § 2255 (1970).

■ Petitioner urges that we view his situation with particular favor because his Rule 32(d) motion is "likely to succeed." He asks, in other words, that we require the Service to conduct an inquiry into each potential deportee's criminal record to ascertain whether a post-conviction motion is likely to overturn his conviction, thereby depriving the Service of a basis for deportation.

■ Were we to require the Service to weigh the probability of success of each potential deportee's post-conviction pleas, we would hopelessly complicate an administrative process which Congress intended to be simple and swift.[8] We will not require the Service to double-guess the courts. A conviction is final and is a valid basis for deportation un-

less and until overturned by a post-conviction plea.

Petitioner's case is instructive in this regard. He claims that he had no idea that deportation might result from his guilty plea and that under United States v. Briscoe, 139 U.S.App.D.C. 289, 432 F.2d 1351, 1353 (1970), he is entitled to withdraw his plea. For the Service or for us to assess the likelihood of his claim, we would need a better understanding of the circumstances surrounding his plea, including advice given by his lawyer and his own level of sophistication, and we would have to undertake an analysis of evolving case law. See United States v. Sambro, 147 U.S.App. D.C. 75, 454 F.2d 918 (1971); Bye v. United States, 435 F.2d 177 (2d Cir. 1970); Briscoe: United States v. Parrino, 212 F.2d 919 (2d Cir. 1954). This is an unwarranted burden to place on the Service, and we will not do so.

Our conclusion does not deprive Petitioner of all relief. He may request an administrative stay of his deportation order pending the outcome of his Rule 32(d) motion.[9] The Service has discretion to stay his deportation order, and a denial of stay is subject to review in this Court, albeit within narrow limits. Polites v. Sahli, 302 F.2d 449 (6th Cir.), cert. denied, 371 U.S. 916, 83 S.Ct. 259, 9 L.Ed.2d 175 (1962). We note that it is unlikely that a stay will be granted on the grounds advanced to this Court. As we learned after oral argument, Petitioner's Rule 32(d) motion was denied on February 3, 1975 as "frivolous."

The petition for review is denied.

DeMASCIO, District Judge (dissenting).

A deportation proceeding so jeopardizes a resident alien's basic and fundamental right to personal liberty that I

---

I. & N. Dec. 592 (1970); Matter of Ibarra-Obando, 12 I. & N. Dec. 576 (1967); Matter of O'Sullivan, 10 I. & N. Dec. 320 (1963).

8. If a judgment of conviction is void on its face, a postconviction adjudication is not required to render it unavailable for deportation

purposes. United States ex rel. Freislinger v. Smith, 41 F.2d 707 (7th Cir. 1930).

9. See generally C. Gordon & H. Rosenfield, Immigration Law and Procedure, ch. 7 (rev'd ed. 1975); Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1950).

cannot agree due process is guaranteed by a "fundamental fairness" analysis on a case-by-case basis. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). I think a resident alien has an unqualified right to the appointment of counsel. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). When the government, with plenary power to exclude, agrees to allow an alien lawful residence, it is unconscionable for the government to unilaterally terminate that agreement without affording an indigent resident alien assistance of appointed counsel. Expulsion is such lasting punishment that meaningful due process can require no less. Assuredly, it inflicts punishment as grave as the institutionalization which may follow an In re Gault finding of delinquency. A resident alien's right to due process should not be tempered by a classification of the deportation proceeding as "civil", "criminal", or "administrative." No matter the classification, deportation is punishment, pure and simple.[1]

In Gagnon, the Supreme Court acknowledged that it was affording parolees and probationers less due process than it afforded juveniles in In re Gault. It reached this result because a parolee or probationer is in that position solely because he was previously convicted of a crime. The court reasoned that parolees and probationers should be required to demonstrate that an attorney would serve a useful purpose prior to compelling the government to provide counsel at government expense. But, in a deportation proceeding, the respondent need not necessarily be before the immigration judge because of a prior conviction.[2] The fact of conviction is only one of numerous grounds for deportation outlined in the statute. Similar to the juvenile, an alien may only stand accused of an offense.

As noted in Gagnon, the function of the probation or parole officer is not to "compel conformance to a strict code of behavior" but to "supervise a course of rehabilitation." 411 U.S. 784, 93 S.Ct. 1760. Insertion of counsel into such a "predictive and discretionary" proceeding could inadvertently circumscribe the officer's flexibility. However, no such justification for the exclusion of counsel exists in deportation proceedings where the sole duty of the immigration law judge is to determine whether a deportable offense has occurred. 8 U.S.C. § 1251(a).

Further, a probation revocation hearing is a non-adversary proceeding. The government is not represented by a prosecutor. There are no procedural rights which may be lost as in a criminal trial. A deportation hearing on the other hand is always an adversary proceeding.[3]

---

1. Based upon a civil-criminal classification, the Seventh and Ninth Circuits have ruled that indigent aliens have no right to appointed counsel. Tupacyupanqui-Marin v. Immigration & Nat. Service, 447 F.2d 603 (7th Cir. 1971); Murgia-Melendrez v. United States Immigration & Nat. Serv., 407 F.2d 207 (9th Cir. 1969).

2. If the court wishes to extend Gagnon, perhaps a better approach is to limit the case-by-case appointment of counsel to proceedings where respondent is being deported because he has a previous conviction and is, therefore, entitled to less due process. In all other instances, counsel should be appointed as a matter of right under the due process clause. The court suggests an indigent alien is entitled to appointed counsel only when it is necessary " . . . to present his position adequately to an immigration judge. . . ." (See fn. 3, supra.)

3. A reading of 8 U.S.C. § 1252(b) makes it apparent that the special inquiry officer [now an immigration judge by regulation] functions as a prosecutor, defense lawyer, finder of facts, and judge. While the statute does not provide for the appointment of a government trial attorney, a regulation does. 8 CFR § 242.16(c) provides that if an alien does not admit he is deportable the immigration judge shall appoint a government trial attorney to establish the facts justifying deportation. At the hearing, the rules of evidence do not apply. Hearsay evidence is admissible. During such an adversary hearing, the indigent resident alien stands alone. He does not have a lawyer to meaningfully participate in making a record, a record upon which the Appeals Board and this court will determine whether the order of deportation was supported by evidence that is clear and convincing.

*Gagnon* does not go so far as to hold that in adversary proceedings due process may be afforded on a case-by-case basis by retrospective determination that the hearing was characterized by "fundamental fairness."

The court today has fashioned a test to resolve whether a resident alien's due-process right requires appointment of counsel. That test is whether " . . . in a given case, the assistance of counsel would be necessary to provide 'fundamental fairness—the touchstone of due process.' " *Gagnon, supra.* The majority concludes that lack of counsel before the immigration judge did not prevent full consideration of petitioner's sole argument and no different result would have been obtained had counsel been appointed. Accordingly, the court holds the hearing was fundamentally fair.[4] These conclusions are reached by second guessing the record—a record made without petitioner's meaningful participation.

In my view, the absence of counsel at respondent's hearing before the immigration judge inherently denied him fundamental fairness. Moreover, I do not believe that we should make the initial determination that counsel is unnecessary; or that lack of counsel did not prevent full administrative consideration of petitioner's argument; or that counsel could not have obtained a different administrative result.[5] We should not speculate at this stage what contentions appointed counsel could have raised before the immigration judge. For exam-ple, a lawyer may well have contended that § 1251(a)(11) is an unconstitutional deprivation of the equal protection of the laws by arguing that alienage was the sole basis for the infliction of punishment, additional to that imposed by criminal law; that since the government elected to rely upon the criminal law sanctions, it may not now additionally exile petitioner without demonstrating a compelling governmental interest.

I do not intend to imply such a contention has validity. I cite this only to emphasize the danger of attempting to speculate at this stage whether counsel could have obtained a different result and to show that it is possible that the immigration judge did not fully consider all of petitioner's arguments.

Because the consequences of a deportation proceeding parallels punishment for crime, only a per se rule requiring appointment of counsel will assure a resident alien due process of law. In this case, the respondent, a resident alien for seven years, committed a criminal offense. Our laws require that he be punished and he was. Now, he must face additional punishment in the form of banishment. He will be deprived of the life, liberty, and pursuit of happiness he enjoyed by governmental consent.[6] It may be proper that he be compelled to face the consequences of such a proceeding. But, when he does, he should have a lawyer at his side and one at government expense, if necessary. When the government consents to grant an alien residency, it cannot constitutionally expel unless and until it affords that alien

---

**4.** The Second Circuit has similarly held that where the respondent admits the allegations in the order to show cause and it does not appear that an attorney would affect the outcome, lack of appointed counsel does not violate due process. Henriques v. Immigration & Naturalization Service, 465 F.2d 119, 121 (2nd Cir. 1972), cert. denied, 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703.

**5.** Respondent obtained counsel to appeal his deportation. Before the Board of Immigration Appeals, counsel urged reversal because he had filed a Rule 32(d) motion to attack respondent's prior plea to the narcotic charge. The attorney argued the conviction was not final and, therefore, respondent was not deportable. Because I believe respondent's request for appointed counsel should have been granted, I would not reach the Rule 32(d) motion as the majority does. I would reverse and allow a lawyer to decide how best to protect respondent's interests.

**6.** Of course, what I have said applies only to a resident alien. I readily agree that an alien who enters illegally is entitled to less due process, if any at all. It is interesting to note that the Immigration Act seems to treat all aliens alike.

due process. Our country's constitutional dedication to freedom is thwarted by a watered-down version of due process on a case-by-case basis.

I would reverse and remand for the appointment of counsel before the immigration judge.