**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
—————

No. 12-4025
—————

OMAR OBD GOMAA ORABI,
a/k/a OMAR GOMMA ORABI

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
—————

On Appeal from the Board of Immigration Appeals
(File No. A072-759-091)
Immigration Judge: Honorable Walter Durling.
—————

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 10, 2013

Before: SMITH, GARTH, and SLOVITER *Circuit Judges*.

(Opinion Filed: January 2, 2014)

Omar Obd Gomaa Orabi
Moshannon Valley Correctional Center
555 Geo Drive
Philipsburg, PA 16866
     Petitioner Pro Se

Sharon M. Clay, Esq.
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Timothy B. Stanton, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
     *Counsel for Respondent*

———

## OPINION OF THE COURT
———

GARTH, *Circuit Judge*.

Petitioner, Omar Abd Gomaa Orabi, appeals from an order of removability, entered by the Honorable Walter Durling, U.S. Immigration Judge ("IJ"), on May 22, 2012, and approved by the Board of Immigration Appeals ("BIA") on September 18, 2012.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). For the reasons that follow, we will reverse the decision of the IJ and BIA.

# I

Orabi, an Egyptian citizen, was admitted to the United States in 1990 and became a lawful permanent resident without conditions in 1996. In 2010, he was convicted in the U.S. District Court for the Southern District of New York ("S.D.N.Y.") for the offenses of Conspiracy to Commit Fraud in connection with Access Devices, Possession of Counterfeit Access Devices, Possession of Counterfeit and Forged Checks, and Aggravated Identity theft. He was sentenced to a term of imprisonment of 70 months. In November 2011, the District Court amended its judgment and recalculated Orabi's sentence; however, Orabi was still sentenced to a term of 70 months. He appealed that order to the Second Circuit in December 2011, and that appeal remains pending. See United States v. Ibrahim (Orabi), C.A. No. 12-0044 (2d Cir., filed Dec. 29, 2011).

In February 2012, the Department of Homeland Security ("DHS") initiated removal proceedings against Orabi. Among other things, DHS charged that Orabi was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his S.D.N.Y. conviction was for an aggravated felony. See 8 U.S.C. § 1101(a)(43)(R). Orabi notified DHS and the Immigration Court that he was appealing the S.D.N.Y. conviction, and DHS moved to withdraw the aggravated felony removal charge. At a subsequent removal hearing, Orabi appeared *pro se* and took part in an ambiguous exchange with the IJ regarding the status of the Second Circuit appeal. At the IJ's request, Orabi also agreed to provide a letter that ostensibly withdrew his Second Circuit appeal. DHS therefore moved to reinstate the removal charge, and the IJ sustained it.

3

The appellate record of the Second Circuit reveals neither the letter, which ostensibly withdrew Orabi's appeal, nor any motion by Orabi to withdraw the appeal.[1] Indeed, after a thorough examination of the docket sheet of the Second Circuit, it appears that Orabi's appeal from his S.D.N.Y. conviction is still awaiting disposition by the Second Circuit.

We make reference to the record of the Second Circuit because it is that record that is controlling regarding the documents received and matters affecting the appeal of a litigant. Moreover, absent any proof of actions, documents, affidavits, or similar submissions that might contradict the record, it is the record that governs. See, e.g., U.S. v. Simpson, 94 F.3d 1373, 1381 (10th Cir. 1996) ("We believe that a certified docket sheet is adequate, absent some contradictory evidence by the defendant, to establish the existence of a prior conviction for this sentencing purpose" (citing United States v. Dickens, 879 F.2d 410 (8th Cir. 1989)); Brainerd v. Beal, 498 F.2d 901 (7th Cir. 1974) ("[T]he district court's docket cannot be impeached by affidavit" (citing Wall v. United States, 97 F.2d 672 (10th Cir. 1938), cert. denied, 305 U.S. 632 (1938))). Here, as we have indicated, the record is devoid of any such submissions by Orabi. Hence, we regard Orabi's appeal of his criminal

---

[1] We may take judicial notice of the contents of another Court's docket. See, e.g., Mar. Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Porter v. Ollison, 620 F.3d 952, 954-55 (9th Cir. 2010); Singh v. U.S. Dep't of Homeland Sec., 526 F.3d 72, 80 n. 9 (2d Cir. 2008); see also F.R.E. 201(b). But see Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004) abrogated on other grounds by Nbaye v. Attorney General, 665 F.3d 57 (3d Cir. 2011).

4

conviction as still extant and therefore viable. We credit Orabi's appeal to the BIA, where he has argued that his Second Circuit appeal has never been withdrawn.

While Orabi argued on appeal to the BIA that his convictions were not final for immigration removal and that the IJ's removal order was void, the BIA nevertheless held that his conviction remained final for immigration purposes. The BIA stated:

> [U]nder section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A), the term "conviction" means "a formal judgment of guilt of the alien entered by a court." Whether such judgment may be subject to direct appeal is immaterial to the attachment of immigration consequences. See, e.g., Planes v. Holder, 686 F.3d 1033 (9th Cir. 2012)[2] . . . . The Immigration Judge therefore properly considered the immigration consequences of [Orabi's] conviction.

---

[2] The citation provided by the BIA for Planes v. Holder, 686 F.3d 1033 (9th Cir. 2012), is actually a citation to a concurrence in an order denying rehearing *en banc* by the Honorable Sandra S. Ikuta, a Ninth Circuit U.S. Court of Appeals Judge. The dissent in that order was written by the Honorable Stephen R. Reinhardt, U.S. Court of Appeals Judge. We discuss his reasoning in text *infra*. The citation to the initial panel decision denying Planes's petition is Planes v. Holder, 652 F.3d 991 (9th Cir. 2011), authored by Judge Ikuta.

5

Accordingly, the BIA dismissed Orabi's appeal.[3]

On August 12, 2013, the Government filed a letter brief stating that: (1) Orabi had been deported to Egypt; (2) *despite Orabi's deportation, we retained jurisdiction*; and (3) the Government was prepared to return Orabi to the United States pursuant to Immigration Control Enforcement ("ICE") regulations. See ICE Policy, § 11061.1(2) ("Absent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. [C]ourt of [A]ppeals was removed while his or her [petition for review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings."); see also 8 U.S.C. § 1229a(b)(2)(A) (requiring an immigrant's presence at a removal hearing absent the parties' consent or a telephonic or video conference).

Orabi now petitions *pro se* before us for review. Whether we have jurisdiction is the crux of his appeal from the BIA. The answer to this question depends on whether the S.D.N.Y. conviction, which is on appeal to the Second Circuit, was a final judgment for immigration purposes.

II

---

[3] Orabi also submitted to the BIA a copy of a Second Circuit order dated July 16, 2012 granting his motion for an extension of time in his criminal appeal. The BIA noted that the order constituted new evidence but held that the pendency of a criminal appeal was immaterial to Orabi's immigration proceedings.

Although 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain] criminal offense[s]," 8 U.S.C. § 1252(a)(2)(D) grants us jurisdiction to review "constitutional claims or questions of law raised upon a petition for review" of final removal orders. Paredes v. Att'y Gen., 528 F.3d 196, 198 (3d Cir. 2008); Papageorgiou v. Gonzales, 413 F.3d 356, 357-58 (3d Cir. 2005). We review questions of law *de novo*, Caroleo v. Gonzales, 476 F.3d 158, 162 (3d Cir. 2007), but we "will not disturb the IJ's credibility determination and findings of fact if they are supported by reasonable, substantial and probative evidence on the record considered as a whole." Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003) (internal quotation marks omitted). Whether Orabi's conviction was final for immigration purposes despite the pendency of his appeal to the Second Circuit is a question of law subject to plenary review. See Henry v. Bureau of Immig. & Customs Enforcement, 493 F.3d 303, 306 (3d Cir. 2007).

### III

The Government offers three arguments in support of its position that Orabi's conviction was final for immigration purposes: (1) the record supports the Agency's finding that Orabi withdrew his appeal to the Second Circuit; (2) Orabi's conviction was final regardless of whether his appeal was withdrawn because his appeal only challenged his sentence and not the finding of his guilt; and (3) this Court should adopt the position of its sister Circuits and the BIA that *a conviction is final for immigration purposes regardless of whether a direct appeal is pending*.

7

## A

We have already discussed *supra* why the Government's position as to the withdrawal of Orabi's appeal cannot prevail. Based on the Second Circuit record, Orabi had – and has – a pending appeal before that Court. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005). Additionally, the BIA did not base its decision on its finding that Orabi did not have a pending appeal, but rather on its determination that a conviction is final for immigration purposes regardless of whether a direct appeal is pending. See AR 3 (citing Planes v. Holder, 686 F.3d 1033, 1034 (9th Cir. 2012) (Ikuta, J., concurring in denial of rehearing *en banc*)).

## B

The Government's argument regarding the sentence/conviction distinction and the contents of Orabi's Second Circuit appeal is similarly unavailing. Because the BIA did not reach its decision based on this ground, we may not affirm the judgment on this ground. See Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); Li v. Att'y Gen., 400 F.3d 157, 163 (3d Cir. 2005) (noting that a court cannot affirm an agency decision on a ground upon which the agency did not rely).

## C

Thus, we turn to the Government's concluding argument concerning the finality for immigration purposes of the Second Circuit appeal from Orabi's criminal judgment of conviction.

Prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), it was "well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived." In re Ozkok, 19 I. & N. Dec. 546, 552 n.7 (BIA 1988) (citing Marino v. INS, 537 F.2d 686 (2d Cir. 1976); Aguilera-Enriquez v. INS, 516 F.2d 565 (6th Cir.1975); Will v. INS, 447 F.2d 529 (7th Cir.1971)); see also Planes, 686 F.3d at 1037 (Reinhardt, J., dissenting from the denial of rehearing *en banc*) (citing "the longstanding rule that a conviction is not final for immigration purposes until the immigrant has exhausted or waived his direct appeal as of right").

The IIRIRA defined the term "conviction," for purposes of immigration removal as:

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

Thus, the IIRIRA's amendment, which focuses solely on the term "conviction," sought to broaden the scope of that term, but in so doing, it did not refer to, amend, change, or even mention doing away with the need for appeal to acquire finality of judgment. Understandably, Section 322, as recalled in the Conference Committee Report of the House of Representatives, addressed only adjudications that were "deferred" (a product of numerous state procedures) and instances in which the subject alien has violated a term or condition of probation. See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *496-97. In those cases, the IIRIRA amendment was designed to correct "a myriad of provisions for ameliorating the effects of a conviction" by giving effect to the "original finding or confession of guilt . . . to establish a 'conviction' for purposes of the immigration laws." Id.

Consequently, following IIRIRA's passage, this Court's precedent governing the finality requirement in immigration removal cases remained undisturbed. In Paredes v. Att'y Gen., decided twelve years later than the amendment to the IIRIRA, we understandingly subscribed to the position that until such time as a direct appeal from a conviction that authorizes removal has been resolved, the judgment is not final for immigration removal purposes. 528 F.3d 196, 198 (3d Cir. 2008). Our jurisdiction for immigration removal purposes is therefore retained.[4]

Other Courts, however, have held that a conviction is final for immigration purposes *notwithstanding* any pending

---

[4] As we stated, the Government conceded in its August 12, 2013 letter brief that despite Orabi's deportation, we retain jurisdiction.

appeals, without giving effect to the purpose of the IIRIRA. See, e.g., Planes, 686 F.3d at 1034 (Ikuta, J., concurring in the denial of rehearing *en banc*) (collecting cases).

We do not agree that the IIRIRA eliminated a direct appeal from the finality rule in its definition of conviction. Hence, we do not agree with those Courts that have adopted this interpretation. See, e.g., id. (collecting cases). By doing so, they have vitiated, without reason, the BIA's rule formulated and established in In re Ozkok, 19 I. & N. Dec. 546, 552 n.7 (BIA 1988).

In Ozkok, the BIA held that "*[w]here adjudication of guilt has been withheld*, . . . further examination of the specific procedure used and the state authority under which the court acted will be necessary." 19 I. & N. at 551 (emphasis added). The BIA went on to identify three elements that established a "conviction" in such settings:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and

11

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

Id. at 551-52. That is, "for immigration purposes, a deferred adjudication [as distinct from a pending appeal] would be considered a conviction if three elements were met, *the third of which consisted of a finality requirement*." Planes, 686 F.3d at 1040 (Reinhardt, J., dissenting from the denial of rehearing *en banc*) (emphasis added).

While Congress "adopted almost verbatim" this definition of "conviction" in the IIRIRA, id. at 1039, the statute explicitly eliminated the finality requirement for *deferred adjudications*. See 8 U.S.C. § 1101(a)(48)(A); see also H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *496-97. Indeed, the Congressional Conference Committee Report accompanying IIRIRA refers only to a modification of the treatment of deferred adjudications: "This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases *where adjudication is 'deferred,'* the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." Id. (emphasis added), quoted in Moosa v. INS, 171 F.3d 994, 1002 (5th Cir. 1999)). Therefore, we agree with the Planes dissent that

Nothing in IIRIRA or its legislative history suggests that Congress intended the phrase "formal judgment of guilt" to be interpreted any

12

> differently from how it always had been interpreted prior to the enactment of the statute. . . . The elimination of the finality provision for deferred adjudications, along with the failure to make any change in the language regarding direct appeals as of right . . . demonstrates Congress' intent to retain the finality rule for the latter category of appeals.

686 F.3d at 1039-40 (Reinhardt, J., dissenting from the denial of rehearing *en banc*); see also Williams v. Taylor, 529 U.S. 420, 434 (2000) ("When the words of the Court are used in a later statute governing the same subject matter, it is respectful of Congress and of the Court's own processes to give the words the same meaning in the absence of specific direction to the contrary.").

Given that Orabi's appeal was one *of right* and that *no deferred adjudication is at issue h*ere, we hold that the IIRIRA's elimination of the finality requirement in the case of *deferred adjudications* does not disturb the longstanding finality rule for direct appeals recognized in Ozkok and is irrelevant to the matter before us.

Further, Ozkok, which states that "a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived," 19 I. & N. Dec. at n. 7, is approvingly cited in Paredes as pertaining to a *direct* appeal as distinguished from a *collateral* appeal of a judgment, 528 F.3d at 198. Paredes, itself, involved a collateral appeal taken after the petitioner, Paredes, had suffered two state (New Jersey) convictions. Paredes did not appeal the state

13

convictions but filed petitions for writs of *coram nobis* to challenge them. Id. We explained that a petition for a writ of *coram nobis* is *not* a *direct appeal* of a conviction but is rather a *collateral attack* on a conviction. Id. (citing United States v. Gross, 614 F.2d 365, 368 (3d Cir. 1980)). As such, and because Paredes's time to appeal directly had expired, we denied Paredes's petition. Id. at 198-99.

Accordingly, consistent with other Circuits, we do not retain jurisdiction for immigration purposes in our Court when a collateral appeal is taken from a criminal judgment adverse to a petitioner *because it is not a direct appeal*. Id. (citing United States v. Garcia-Echaverria, 374 F.3d 440, 445-46 (6th Cir. 2004); Grageda v. INS, 12 F.3d 919, 921 (9th Cir. 1993); Okabe v. INS, 671 F.2d 863, 865 (5th Cir. 1982); Aguilera-Enriquez v. INS, 516 F.2d 565, 570-71 (6th Cir. 1975); Will, 447 F.2d at 533).

Here, however, unlike the collateral challenge in Paredes, the criminal appeal awaiting resolution by Orabi is a *direct appeal*. The IIRIRA amendment that speaks only to the term "conviction"[5] cannot change the result of our analysis and reasoning in Paredes, despite the holdings of other Courts.

Further, despite the Government's claims to the contrary, we do not read Planes as providing a consensus as to the correct interpretation of the IIRIRA's "finality rule." As the Planes dissent correctly notes, "each of the cases cited by the panel is distinguishable, and only the one decided by the Tenth Circuit [United States v. Saenz-Gomez, 472 F.3d 791 (10th Cir. 2007)] purports to hold that a petitioner is not

---

[5] 8 U.S.C. § 1101(a)(48)(A).

14

entitled to a direct appeal as of right prior to being deported." 686 F.3d at 1039 n.4 (Reinhardt, J., dissenting from the denial of rehearing *en banc*). See, e.g., Waugh v. Holder, 642 F.3d 1279, 1281-82 (10th Cir. 2011) (denying petitioner's appeal where his collateral attack was pending); Ramirez v. Holder, 447 F. App'x 249 (2d Cir. 2011) (recognizing the statements regarding finality in Puello v. Bureau of Citizenship & Immig. Servs., 511 F.3d 324, 331-2 (2d Cir. 2007), as dicta); Abreu v. Holder, 378 F. App'x 59 (2d Cir. 2010) (vacating a decision by the BIA that the pendency of a late-reinstated appeal did not undermine the finality of an alien's conviction); Saenz-Gomez, 472 F.3d at 794 (addressing the definition of "conviction" in the context of a sentencing enhancement at a criminal re-entry proceeding as opposed to a removal hearing); Montenegro v. Ashcroft, 355 F.3d 1035 (7th Cir. 2004) (per curiam) (involving a collateral appeal and a petition of certiorari rather than a direct appeal); Griffiths v. INS, 243 F.3d 45, 54 (1st Cir. 2001) ("The INS was careful at oral argument to say that it was not taking the position it could deport someone adjudicated guilty while their appeal or appeal period was pending. . . . Both the statutory language and the legislative history reflect a determination that a distinct mode of treatment for deferred adjudications is appropriate in this context"); Moosa, 171 F.3d at 1001 (holding only that the finality rule had been eliminated as to deferred adjudications, not as to direct appeals).

We are therefore convinced that the principle announced and held in Ozkok – that "a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been

15

exhausted or waived"[6] – is "is alive and well" in this Circuit and is correctly applied to Orabi as this Circuit's precedent.

The judgment of the BIA will therefore be reversed, with instructions that the Government, pursuant to its August 12, 2013 letter, be directed to return Orabi to the United States in accordance with the ICE regulations cited.

---

[6] 19 I. & N. Dec. at 552 n.7.

SMITH, *Circuit Judge*, dissenting:

I agree with the majority that we have jurisdiction to consider Orabi's petition for review and that his appeal from a conviction on an aggravated felony is still pending before the Second Circuit. I also agree that, prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), P.L. 104-208, 110 Stat. 3009 (1996), the pendency of Orabi's direct appeal would have meant that his conviction was not final for immigration purposes and could not have been considered as a basis for removal. I part company with the majority when it concludes that the pendency of Orabi's direct appeal means that the conviction cannot serve as a basis for removal following enactment of the IIRIRA. That statute for the first time defined the term "conviction" for purposes of the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1101(a)(48)(A) (defining the term "conviction"). Because this court did not address in *Paredes v. Attorney General*, 528 F.3d 196, 198 (3d Cir. 2008), and has not addressed in any other case, whether the finality requirement survived the IIRIRA's new definition of "conviction," we are free to decide that issue now. In my view, the plain text of the statutory provision defining "conviction" does not require the exhaustion or waiver of an alien's right to a direct appeal from a formal judgment of guilt before that conviction may serve as the predicate for an alien's removal. Because I conclude that the pendency of Orabi's direct appeal no longer prevents his conviction from serving as the basis for his removal as an aggravated felon, I would deny the petition for review.

1

I.

As the majority correctly notes, prior to the enactment of the IIRIRA, the term conviction was not defined in the immigration laws. Under pre-IIRIRA case law, a conviction could not serve as the basis for removal until it had "attained a substantial degree of finality. Such finality [did] not occur unless and until direct appellate review of the conviction . . . ha[d] been exhausted or waived." *Marino v. INS*, 537 F.2d 686, 691-92 (2d Cir. 1976) (citing, *inter alia*, *Pino v. Landon*, 349 U.S. 901 (1955)). This "finality requirement," as some courts have referred to it, was well established. *White v. INS*, 17 F.3d 475, 479 (1st Cir. 1994) (referring to the "finality requirement," which required the exhaustion or waiver of direct appellate review before a conviction occurred for immigration purposes); *see also Martinez-Montoya v. INS*, 904 F.2d 1018, 1025 (5th Cir. 1990) (tracing "requirement of finality" to Supreme Court's decision in *Pino*); *Morales-Alvarado v. INS*, 655 F.2d 172, 175 (9th Cir. 1981) (acknowledging that conviction on direct appeal is not final for immigration purposes); *Aquilera-Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir. 1975) (discussing *Pino* and finality for immigration purposes); *Will v. INS*, 447 F.2d 529, 533 (7th Cir. 1971) (same).

As the states adopted various criminal procedures designed to "amelior[ate] the consequences of a conviction," the finality requirement proved increasingly difficult to apply in the immigration context.[1] *In re Ozkok*, 19 I. & N. Dec.

---

[1] The BIA explained in *In re Ozkok* that criminal "procedures var[ied] from state to state and include[d] provisions for

2

546, 550-51 (BIA 1988).  In *Ozkok*, the BIA revised its standard for a final conviction for purposes of the INA.  It addressed the features necessary for a conviction following (1) a judgment of guilt in the ordinary course of a criminal proceeding (formal adjudications), and (2) an adjudication of guilt that had been withheld (deferred adjudications).[2]  *Id.* at

---

annulling or setting aside the conviction, permitting withdrawal of the plea, sealing the records after completion of a sentence or probation, and deferring adjudication of guilt with dismissal of proceedings following a probationary period."  19 I. & N. Dec. 546, 550 (1988).  It further noted that these "ameliorative provisions" also varied in their applicability, with some being available to certain categories of offenders, such as youthful or first offenders.  *Id.*

[2] *Ozkok* declared that

> As in the past, we shall consider a person convicted if the court has adjudicated him guilty or has entered a formal judgment of guilt. . . .
> Where adjudication of guilt has been withheld, however, further examination of the specific procedure used and the state authority under which the court acted will be necessary. As a general rule, a conviction will be found for immigration purposes where all of the following elements are present:
>> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere

3

551-53.  In a footnote, the BIA noted that "[i]t is well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct

> or has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

19 I. & N. at 551-52.

4

appellate review of the conviction has been exhausted or waived." *Id.* at 552 n.7.

It was against this backdrop that Congress enacted the IIRIRA in 1996. The Act defined for the first time the term "conviction" for immigration purposes:

> The term "conviction" means, with respect to an alien, [(1)] a formal judgment of guilt of the alien entered by a court or, [(2)] if adjudication of guilt has been withheld, where—
>
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>>
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. §1101(a)(48)(A).

This new statutory definition, like the *Ozkok* decision, established the standard applicable to two categories of convictions: formal adjudications and deferred adjudications. The question before us is whether this statutory definition incorporates a finality requirement akin to that found in pre-

5

IIRIRA case law.  The majority answers that question in the affirmative; I disagree.

Our task in interpreting a statute "is to discern legislative intent." *Morgan v. Gay,* 466 F.3d 276, 277 (3d Cir. 2008).  "Because we presume that Congress' intent is most clearly expressed in the text of the statute," we examine "the plain language of the relevant provision." *Reese Bros., Inc. v. United States*, 447 F.3d 229, 235 (3d Cir. 2006); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (instructing that the "first step" in interpreting a statute "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case") (internal quotation marks and citations omitted).

Scrutiny of the IIRIRA definition of "conviction" reveals no language requiring the exhaustion or waiver of a direct appeal before an alien's conviction may serve as a predicate for removal.  Rather, the definition requires only that there has been  a "formal judgment of guilt of the alien entered by a court."  8 U.S.C. § 1101(a)(48)(A).  As to deferred adjudications, the definition demands a record that has expressly or implicitly established the alien's guilt, accompanied by the imposition of some restraint on the alien's liberty.  *Id.*  In the absence of statutory language specifying that a "conviction" under the IIRIRA requires the exhaustion or waiver of the right to appeal, I conclude that the pendency of a direct appeal does not preclude an alien's conviction from serving as the basis for removal.

Nor does *Lorillard v. Pons*, 434 U.S. 575 (1978), require a reading of the statute different from my own.  There,

6

the Supreme Court observed that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Id.* at 580. But that presumption is not applicable here. First, Congress did not *re-enact* a statutory definition of the term "conviction." Instead, Congress carefully fashioned for the first time in the IIRIRA a definition of the term "conviction" for purposes of the INA. Second, the definition it enacted was a departure from the existing administrative standard set forth in *Ozkok*. As I see it, congressional intent could not be more clear.

Prior to the IIRIRA, *Ozkok* established the standard for formal and deferred adjudications. Both of these categories required finality before a conviction could be the basis for removal of an alien. Finality was required for formal adjudications by virtue of the finality requirement highlighted in the footnote in *Ozkok*. 19 I. & N. Dec. at 552. n.7. Finality for deferred adjudications was necessary under the third prong set forth in the *Ozkok* standard. *Id.* at 552.

In fashioning the definition of the term "conviction" for immigration purposes, Congress embraced to a great extent the *Ozkok* definition for conviction. Yet it stopped short of adopting the *Ozkok* standard in its entirety. Instead, in setting out the definition of conviction for the two categories, Congress eliminated the third prong of the *Ozkok* standard for deferred adjudications. That third prong had a finality requirement. *Id.* (specifying that the deferred adjudication qualified as a conviction if it was "without availability of further proceedings regarding the person's guilt or innocence of the original charge").

7

By choosing to eliminate the finality requirement for deferred adjudications in *Ozkok*, it stands to reason that Congress considered it for convictions as well. Its elimination of the finality requirement for deferred adjudications resulted in a definition that demands treating formal and deferred adjudications in the same manner. That is, neither formal nor deferred adjudications now require the exhaustion or waiver of a direct appeal before a conviction may serve as a basis for removal under the INA.

Indeed, if Congress had intended to require a finality component in the first statutory definition of the term "conviction," it could have easily included such a requirement. Congress knows well, and knew at the time, how to refer to final convictions because it did so in other provisions in the INA concerning removal. *See* 8 U.S.C. §§ 1227(a)(2)(D) (including among the class of criminal offenses making an alien deportable, certain miscellaneous offenses for which an alien "has been convicted (the judgment on such conviction becoming final)"); 1228(c)(3)(A)(iii) (providing that before a district court may enter a judicial order of removal at the time of sentencing against an alien who is deportable, there must be a valid waiver of the right to appeal, the expiration of the period to file a petition for review, or the final dismissal of an appeal from such a conviction); and 1231(a)(4)(B)(i) & (ii) (authorizing Attorney General to remove an alien before he has completed a sentence of imprisonment if the confinement of the alien is "pursuant to a *final* conviction for a nonviolent offense") (emphasis added). I rely on the well-settled proposition "that where Congress includes particular language in one section of a statute but

8

omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (internal quotation marks and citations omitted). I see no basis in the principles of statutory interpretation for importing the finality requirement in pre-IIRIRA case law into the definition of "conviction" at 8 U.S.C. § 1101(a)(48(A).[3]

## II.

The majority is of the view that *Paredes v. Attorney General*, 528 F.3d 196 (3d Cir. 2008), has already determined that the "finality requirement in immigration removal cases remained undisturbed" by the IIRIRA's definition of the term "conviction." Again, I disagree. *Paredes* concerned whether a pending *collateral attack* negated the finality of a conviction for immigration purposes. We agreed with our

[3] The majority relies on legislative history. Because the plain text of the statutory definition of "conviction" makes clear that exhaustion or waiver of the right to a direct appeal is not required, I do not address that aspect of the majority's reasoning. *See Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009) (acknowledging that resort to legislative history is unnecessary "if a statute is clear on its face"); *see also United States v. Gregg*, 226 F.2d 253, 257 (3d Cir. 2000) ("To determine a law's plain meaning, we begin with the language of the statute. If the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms.").

sister courts of appeals that a pending collateral attack did not vitiate the finality requirement. 528 F.3d at 198-99. Because the alien was seeking to set aside his conviction in a collateral attack proceeding, his conviction was indisputably final. There was no need, therefore, to address in *Paredes* whether the pendency of a direct appeal of a conviction post-IIRIRA precluded an alien's conviction from constituting a basis for removal. Indeed, *Paredes* did not even acknowledge that *Ozkok* was decided pre-IIRIRA or that the IIRIRA had defined the term "conviction" for the first time for purposes of the INA. Quite simply, *Paredes* is inapposite to the question before us.

To be sure, as the majority acknowledges, there is no consensus among the courts of appeals as to whether there is a finality requirement post-IIRIRA for a conviction to constitute a basis for removal. Some of our sister courts of appeals have concluded that there is no finality component in the new statutory definition of "conviction." *Planes v. Holder*, 652 F.3d 991, 995 (9th Cir. 2011) (rejecting alien's argument urging court to deviate from plain language of statute and to rely on case law predating enactment of a statutory definition of "conviction" and declaring that a "conviction" under § 1101(a)(48)(A) "exists once the district court enters judgment, notwithstanding the availability of an appeal as of right"); *Planes v. Holder*, 686 F.3d 1033, 1034 (9th Cir. 2012) (concurring in denial of rehearing en banc) (concluding that the determination of whether an alien has a conviction is without regard to "whether appeals have been exhausted or waived"); *Waugh v. Holder*, 642 F.3d 1279, 1284 (10th Cir. 2011); *Montenegro v. Ashcroft*, 355 F.3d

10

1035, 1037 (7th Cir. 2004); *see also Puello v. Bureau of Citizenship & Immig. Servs.,* 511 F.3d 324, 332 (2d Cir. 2007) (observing that the IIRIRA "eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute"); *Moosa v. INS*, 171 F.3d 994, 1009 (5th Cir. 1999) (observing that there was no indication that the finality requirement of *Pino v. Landon* "survive[d] the new statutory definition of 'conviction' found in the IIRIRA").

Yet there are decisions which have rejected the contention that the finality requirement may no longer be a factor in deciding whether there is a basis for removal. *See Abreau v. Holder*, 378 F. App'x 59, 62 (2d Cir. 2010) (remanding, despite *Puello*'s observation, for the BIA to determine if the alien's conviction was sufficiently final for purposes of removal); *see also Planes v. Holder*, 686 F.3d 1033, 1037, 1039 n.4 (9th Cir. 2012) (dissenting from denial of rehearing en banc) (distinguishing the authority that purportedly holds that the finality requirement did not survive the enactment of the statutory definition of "conviction" in the IIRIRA).

"Our task is to apply the text, not to improve on it." *Pavelic & LeFlore v. Marvel Entm't Grp*., 493 U.S. 120, 126 (1989). I conclude that the statutory term "conviction" in the IIRIRA does not require the exhaustion or waiver of an alien's right to appeal a conviction before that conviction may qualify as a ground for removal. Accordingly, the pendency of Orabi's direct appeal post-IIRIRA does not preclude his conviction from serving as the basis for his removal. For that reason, I would deny Orabi's petition for review.

11

I respectfully dissent.