RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-5801

PEDRO SILVESTRE-GREGORIO,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:18-cr-00155-1—J. Ronnie  Greer, District Judge.

Argued:  February 5, 2020

Decided and Filed:  December 22, 2020

Before:  BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant.  William A Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  Stephen B. Kang, ACLU IMMIGRANTS' RIGHTS PROJECT, San Francisco, California, for Amici Curiae. **ON BRIEF:**  Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant.  William A Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  Stephen B. Kang, Cody H. Wofsy, ACLU IMMIGRANTS' RIGHTS PROJECT, San Francisco, California, for Amici Curiae.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.   Pedro Silvestre-Gregorio challenges his conviction for unlawful reentry of a removed alien by bringing a collateral attack against his underlying removal order from nineteen years ago.   Silvestre-Gregorio alleges that the government violated his due-process rights at his 2001 removal proceeding by failing to provide him with counsel even though he was a juvenile at the time, and by failing to inform him that discretionary relief might be available.   The district court rejected both claims and our precedent resolves each issue.   Because this court has held that there is no constitutional right to government-provided counsel at civil removal proceedings and that an alien does not have a constitutional right to be informed of discretionary relief, we must AFFIRM.

**I.**

Silvestre-Gregorio first entered the United States illegally in February 2001 at the age of sixteen.   He was detained within a few weeks of his arrival and had his removal hearing on March 22, 2001.   He did not have an attorney, but he did receive the assistance of an interpreter and was accompanied by a social worker from Associated Catholic Charities, in whose care he had been placed.   The interpreter spoke Spanish; Silvestre-Gregorio spoke little English and some Spanish, but his native tongue was "Chuj," a regional dialect of northern Guatemala.   However, he was still able to understand and answer open-ended questions in Spanish, including where he was born, how he crossed the border, and how he got from the border to Houston.   But the immigration judge did have to repeat a few questions.   Nonetheless, the immigration judge sought to develop the record and patiently explained to Silvestre-Gregorio his options, including his ability to appeal the decision and his right to be represented by retained counsel.   The immigration judge explained to Silvestre-Gregorio that he would be given a list of attorneys who would be willing to represent him "at little or no cost" and that he could take some time to find and talk to an attorney.   The immigration judge then asked him several times if he would like some time to find an attorney.   Silvestre-Gregorio declined and said that he wanted to finish his case that day.   The immigration judge did not notify Silvestre-Gregorio about voluntary removal

because the judge concluded that relief was not available to him. After Silvestre-Gregorio said he did not want to appeal the immigration judge's decision, he was ordered removed. He was physically removed from the United States on June 14, 2001.

Silvestre-Gregorio returned to the United States in 2002. He subsequently accumulated a lengthy criminal history that included convictions for domestic assault, public intoxication, theft, driving while under the influence, and driving without a license. While he was being held in the Hamblen County, Tennessee, jail after his arrest for domestic assault, federal agents discovered that he was not a U.S. citizen and that he had previously been removed.

On October 10, 2018, the grand jury charged Silvestre-Gregorio with unlawful reentry of a removed alien, in violation of 8 U.S.C. § 1326(a). Silvestre-Gregorio moved to dismiss on the grounds that his prior removal in 2001 violated his right to due process and could not be the basis for his conviction under § 1326. The district court held a hearing on the motion. After hearing from Silvestre-Gregorio and several other witnesses, the district court denied the motion, finding that Silvestre-Gregorio could understand the interpreter during his removal hearing and that he did not have a constitutional right to government-provided counsel at his removal hearing or a constitutional right to be notified of discretionary relief. Silvestre-Gregorio preserved his right to appeal the denial of his motion to dismiss and the district court's finding that his prior removal was a valid basis for a § 1326 conviction. But the elements of the unlawful reentry offense were otherwise stipulated. The Guidelines range was two to eight months, and the district court sentenced him to six months. Silvestre-Gregorio now appeals.

**II.**

"This court reviews de novo the denial of a motion to dismiss an indictment and a collateral attack upon a prior removal order underlying a conviction for unlawful reentry." *United States v. Zuniga-Guerrero*, 460 F.3d 733, 735 (6th Cir. 2006) (citation omitted). We review the district court's factual findings for clear error, including the determination as to whether a defendant's waiver "was knowingly and voluntarily made." *United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003) (citation omitted).

"A defendant charged with unlawful reentry may not challenge the validity of his deportation order unless he demonstrates that: '(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'" *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017) (quoting 8 U.S.C. § 1326(d)). "Because the requirements are conjunctive, the alien must satisfy all three prongs." *Id*. But frequently, as is the case here, the dispute centers on the third prong of § 1326(d), *i.e.*, whether the order was fundamentally unfair. "To prove the fundamental unfairness of an underlying deportation order, a defendant must show both a due process violation emanating from defects in the underlying deportation proceeding and resulting prejudice." *Id*.

Before an alien can demonstrate a violation of the Due Process Clause, he must initially "establish that [he] has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause in the first place." *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). Silvestre-Gregorio does not claim to have been deprived of a life or property interest, so we consider only whether a liberty interest has been triggered. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state [or federal] laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). Because Silvestre-Gregorio's liberty was "at stake" at his removal proceeding nineteen years ago, *see Bridges v. Wixon*, 326 U.S. 135, 154 (1945), we find that liberty interest sufficiently implicates the Due Process Clause.

Having established that the Due Process Clause is at least triggered, we must next consider whether a violation has occurred. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'") (citation omitted). If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (explaining that, in determining the process "due," courts must consider three factors: (1) the private interest affected, (2) the risk of erroneous deprivation of that private

interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose).[1] *See United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (6th Cir. 2014) ("We apply the well-known balancing test from *Mathews v. Eldridge* to determine if due process was afforded."). If an alien can demonstrate a due-process violation *and* resulting prejudice, then he can establish fundamental unfairness as required by § 1326(d).  *Estrada*, 876 F.3d at 887.

In this case, we need not address the issue of prejudice because Silvestre-Gregorio has not established a due-process violation.  Aliens in removal proceedings are entitled by statute to "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing."  8 U.S.C. § 1229a(b)(4)(A).  Immigration judges are required to inform aliens of this right and to provide them a list of local pro-bono legal service providers.  8 C.F.R. § 1240.10(a)(1), (2).  Silvestre-Gregorio does not claim that he was deprived of this right; nor could he.  He was informed of the right to seek counsel at least three times: once on the Notice to Appear, once on the Rights Form he received (in both English and Spanish), and again during his removal hearing.  The immigration judge asked him if he would like time to find an attorney "at little or no cost" to him.  And Silvestre-Gregorio was given a list of local attorneys who would be willing to represent him for free or at little cost.  But Silvestre-Gregorio said he did not want time to contact an attorney and wanted to finish his case that day.  Despite that waiver of the statutory right to counsel, Silvestre-Gregorio now claims that he was deprived of due process because the court should have appointed counsel for him.  Our precedent binds us in holding that "[t]he Fifth Amendment simply does not guarantee the right to counsel" for aliens at civil removal hearings.  *Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018).  "Unlike in criminal cases, the government has no role in appointing counsel in immigration hearings because the Due Process Clause does not guarantee a right to government-provided counsel in civil litigation," *id.*, where there is no risk that "the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981).  Even though *Al-Saka* does

---

[1]The Supreme Court also sometimes examines historical practices to decide the process that is due, *see, e.g.*, *Dist. Att'ys Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67–72 (2009); *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610–19 (1990) (plurality opinion), but Silvestre-Gregorio makes no claim that immigrants have ever had any right to government-provided counsel as a traditional matter.  Both he and the government rely exclusively on the *Mathews* test, so we analyze his claims solely through that due-process lens.

not expressly address whether this bright-line rule applies equally to juvenile aliens, we see no grounds on which to make an exception.

Whether a court treats juveniles as adults or provides them further protection depends on the situation. The Supreme Court has held that "juveniles are capable of 'knowingly and intelligently' waiving their right against self-incrimination in criminal cases" and that detained alien juveniles have the capacity to waive their right to a hearing before an immigration judge. *Reno v. Flores*, 507 U.S. 292, 309 (1993). Likewise, we have held that minors "can be responsible for their own legal status" in a number of contexts, including waiving their constitutional right to appeal a deportation order or a custody determination, exercising their right to remain silent during interrogation, and receiving personal service. *Jimenez-Castro v. Sessions*, 750 F. App'x 406, 410 (6th Cir. 2018) (citation omitted). But we have also noted that there are times when juveniles are entitled to special protections. *See*, *e.g.*, *Harris v. Klare*, 902 F.3d 630, 639 (6th Cir. 2018) (calling a minor "a newcomer to the law" and holding that her age "counsels against finding voluntary consent" to a search) (citation omitted). Neither party cites a case that speaks directly to whether the right to government-provided counsel depends on the alien's age.

Notwithstanding our holding in *Al-Saka*, Silvestre-Gregorio asks this court to undertake a separate *Mathews* analysis for juvenile aliens.[2] But whether we should conduct a separate

---

[2]Silvestre-Gregorio also argues that we should consider the three additional factors the Supreme Court discussed in *Turner v. Rogers*, 564 U.S. 431, 446–48 (2011), namely: (1) the defendant's ability to pay, (2) whether the other side is represented by counsel, and (3) the availability of substitute procedural safeguards. In *Turner*, the Court held that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Id.* at 448. While the Court was considering the right to counsel at a contempt hearing, *i.e.*, a civil proceeding, the question was whether there is a right to counsel at a proceeding in which "bodily restraint" and "incarceration [are] threatened." *Id.* at 445–46. And because deportation is a restraint on liberty that is different in kind from the one posed by incarceration, *Turner* is inapposite.

As the Supreme Court explained in *Lassiter v. Department of Social Services*, "the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." 452 U.S. 18, 26–27 (1981). While removal does implicate the alien's liberty interest, deportation does not result in the alien's incarceration or otherwise impose physical constraints on him. Consequently, comparisons between removal and incarceration (or similar consequences, *e.g.*, commitment to an institution) are inapt.

*Mathews* analysis for juvenile aliens depends on whether *Al-Saka* binds us as precedent. Although *Mendoza-Garcia v. Barr*, 918 F.3d 498 (6th Cir. 2019), suggested that *Al-Saka*'s holding may have been dicta, we do not view it that way. *See id.* at 504. The alien in *Al-Saka* argued that "his private lawyer's conduct violated the Fifth Amendment" because of the lawyer's deficient performance. 904 F.3d at 432. We rejected that argument on the ground that the alien had no Fifth Amendment right to government-appointed counsel and so no right to the effective assistance of counsel. *Id.* at 432–35. This ground thus "determine[d] the outcome" in *Al-Saka*; it was not dicta. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019).

The implication of Silvestre-Gregorio's argument is that, despite our holding in *Al-Saka*, a *Mathews* analysis would categorically produce a different outcome for juveniles (*i.e.*, that more process would be "due" for juvenile aliens than for adult aliens). But we neither agree nor find any support for the proposition that the age of the alien would so alter the "net weight" of the three *Mathews* prongs that we could reach an outcome different from the one *Al-Saka* reached. *See Lassiter,* 452 U.S. at 27. The Supreme Court in *Lassiter* established a presumption against a blanket right to government-appointed counsel in proceedings that do not pose "at least a potential deprivation of physical liberty." *Id.* at 31. To overcome this presumption, the aliens' interests, as a categorical matter, would need to be "at their strongest, the State's interests [] at their weakest, and the risks of error [] at their peak." *See id.*

To start, the private interest at stake, the first *Mathews* prong, is substantial, regardless of whether the alien is an adult or a juvenile. Deportation, no matter the alien's age, "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted." *Bridges*, 326 U.S. at 154. While the private interest is less strong in this particular case given Silvestre-Gregorio's (at that time) short duration in and weak ties to the United States, *see Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982), this factor might frequently weigh in favor

---

For this reason, *In re Gault*, 387 U.S. 1 (1967), cited by Silvestre-Gregorio, is also inapplicable. In *Gault*, the Court contemplated whether children were entitled to government-provided counsel at delinquency hearings, "which may result in commitment to an institution in which the juvenile's freedom is curtailed." *Id.* at 41. As with *Turner*, the Court in *Gault* was determining whether the government must provide counsel to an individual who potentially faces a severe, physical restraint on the individual's liberty akin to incarceration. Because removal is not incarceration and does not impose physical restraint on the alien, *Turner* and *Gault* are inapplicable to cases regarding the process due at removal proceedings.

of providing counsel to the alien at the government's expense.  But even when the private interest would weigh heavily in favor of affording government-provided counsel, the factor's weight does not change depending on the alien's age.

Next, the government's interest, the third *Mathews* prong, likewise does not change based on the alien's age.  While the fiscal and administrative burden imposed by providing counsel to all aliens (or to all indigent aliens) would be greater than the burden imposed by providing counsel to only juvenile aliens, the latter would still impose an immense burden.  In the first eleven months of fiscal year 2019, some 72,873 unaccompanied alien children were apprehended at the southwest border.  WILLIAM A. KANDEL, CONG. RSCH. SERV., R43599, UNACCOMPANIED ALIEN CHILDREN: AN OVERVIEW 2 (2019), https://fas.org/sgp/crs/homesec/R43599.pdf.   The total number of minors (unaccompanied and accompanied) is necessarily greater.  Even after discounting the number of aliens for whom the government would need to provide counsel (*i.e.*, for all indigent juvenile aliens rather than for all indigent aliens), the burden imposed still would be extraordinary and would not change that the factor weighs strongly against finding a due-process right to government-provided counsel.

Finally, the second *Mathews* prong, the risk of the government's erroneously depriving the private interest, is the only factor that plausibly might depend on the alien's age.  Silvestre-Gregorio claims that as a juvenile he did not understand—and could not have understood—the complexities of immigration law.  To be sure, adult aliens as a category are presumptively more likely to understand immigration proceedings than are juvenile aliens; but we do not believe that the added pressure on this factor alone can overcome the *Lassiter* presumption.   That presumption cannot be overcome categorically unless "the *Eldridge* factors" will "always be . . . distributed" such that the alien's interests are "at their strongest, the States interests [are] at their weakest, and the risks of error [are] at their peak."  *Lassiter*, 452 U.S. at 31.

The procedures used in immigration proceedings are sufficient to satisfy due process even in light of any increased risk of erroneous deprivation that stems from juveniles' relative difficulty in understanding immigration law.  That is in part because the risk of error in removal proceedings (*i.e.*, the risk that an alien is wrongfully deported) does not invariably depend on the alien's having a thorough understanding of immigration law.  For example, the Supreme Court

has held that the Due Process Clause requires the government to hold a removal hearing and to produce clear and convincing evidence at the hearing before an alien may be ordered removed. *Reno*, 507 U.S. at 309 ("[D]ue process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge."); *Woodby v. INS*, 385 U.S. 276, 286 (1966) ("[N]o deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."). In addition to these protections, many circuit courts, including this one, require that the immigration judge help *pro se* parties develop the record. *Mendoza-Garcia*, 918 F.3d at 505 ("We agree with our sister circuits that to provide a fundamentally fair proceeding, immigration judges are bound by the recognized duty to help pro se parties develop the record."). Finally, statutory and regulatory protections governing removal hearings require that aliens be informed of their rights and the availability of potential relief. *See, e.g.*, 8 U.S.C. § 1229a(b)(4)(A) (guaranteeing the right to retained counsel); 8 C.F.R. § 1240.10(a)(1)–(2) (requiring the immigration judge at the start of every removal hearing to inform the alien of his right to retained representation, to inform him of the availability of pro bono legal services, and to make sure that he has received a list of such available services); 8 C.F.R. § 1240.11(a)(2) (requiring the immigration judge to inform an alien of his "apparent eligibility" for relief from removal). These safeguards exist to ensure that there are not arbitrary or unjust removals, and they exist regardless of the alien's age, education, intellectual capacity, English proficiency, or socioeconomic status.

While these protections may be insufficient in the criminal context, they are sufficient to ensure that a basic level of process is provided to aliens before the government orders them removed. Because the purpose, scope, and effectiveness of these protections do not depend on the age of the alien, this factor, as with the other two *Mathews* prongs, likewise is not age-dependent. Because our analysis of the three *Mathews* prongs would remain the same whether applied to a juvenile alien or an adult alien, there is no basis for us to find that *Al-Saka* does not apply, and we must follow our precedent.

Amici cite state laws and various academic findings to support their position that juvenile aliens should receive government-provided counsel. But regardless of whether we would favor these arguments as a matter of policy, "the Constitution does not provide *judicial* remedies for

every social and economic ill." *Lindsey v. Normet*, 405 U.S. 56, 74 (1972) (emphasis added). And whether providing counsel to juvenile aliens is an appropriate use of taxpayer money is a decision for elected officials accountable to the public, not unelected judges. As the Supreme Court has explained, policy decisions in the immigration context are best left to the other branches:

> [I]t must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature. The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy. . . . Thus, it would be improper simply to impose deportation procedures here because the reviewing court may find them preferable.

*Landon*, 459 U.S. at 34–35.

Where, as here, the government holds a hearing, develops the record, provides an interpreter, and explains the rule of law, the alien has received due process. There is no constitutional right to a government-appointed counsel, regardless of age. Not one of our sister circuits has held otherwise. This is not surprising. If we were to hold otherwise, we would be acting outside of our limited role "to say what the law is." *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). If Congress wishes to add additional safeguards, then it has the power to pass legislation and appropriate funds. In the meantime, the judiciary cannot—and should not—arbitrarily change the law to achieve certain policy ends.

Silvestre-Gregorio and amici cite *Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 n.3 (6th Cir. 1975), for the proposition that "[w]here an unrepresented indigent alien would require counsel to present his position adequately to an immigration judge, he must be provided with a lawyer at the Government's expense. Otherwise, 'fundamental fairness' would be violated." This footnote went uncited by this court for 44 years until we quoted it in *Mendoza-Garcia* and said that the statement arguably "fall[s] within the arena of dicta." *Id.* at 504. Because we held in *Aguilera-Enriquez* that the removal proceeding did not violate "fundamental fairness," we did not need to determine when, if ever, counsel must be provided to indigent aliens. 516 F.2d at 569. Consequently, the footnote was unnecessary to our holding and thus was dicta. *See Wright*, 939 F.3d at 701 ("[A] conclusion that does nothing to determine the outcome is dictum and has

no binding force.") (emphasis omitted). And even if it had any enduring vitality, it has no application here. Silvestre-Gregorio has argued only for a categorical right to appointed counsel for all juveniles in immigration proceedings. He has not meaningfully suggested that his proceeding, in particular, was "fundamentally unfair." Nor could he. A proceeding meeting that standard must be "so extremely unfair" that it "violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotations omitted); *see also Al-Saka*, 904 F.3d at 435.

In this case, Silvestre-Gregorio was offered, through an interpreter, the opportunity to secure counsel at little or no cost to him and was directed toward local attorneys willing to provide such services. Yet he declined to seek representation. The immigration judge patiently developed the record, ensured that Silvestre-Gregorio understood his rights, and explained the applicable law. We hold that Silvestre-Gregorio received sufficient process at his removal hearing as required by the Due Process Clause and his removal hearing was not fundamentally unfair.

Finally, the parties dispute whether Silvestre-Gregorio properly argued the other two prongs of 8 U.S.C. § 1326(d), *i.e.*, exhaustion of administrative remedies and improper deprivation of judicial review. However, our finding that Silvestre-Gregorio failed to establish fundamental unfairness is sufficient for our holding that his collateral attack against his prior removal order cannot prevail. "Accordingly, we need not decide whether he exhausted all available administrative remedies, 8 U.S.C. § 1326(d)(1), or whether his deportation proceedings improperly deprived him of judicial review, *id*. § 1326(d)(2)." *Estrada*, 876 F.3d at 889.

### III.

Silvestre-Gregorio argues in the alternative that the immigration judge violated his due-process rights by failing to follow the relevant immigration regulations and by failing to notify him that he had the ability to seek voluntary departure. His two arguments repeat the same point, *i.e.*, because the immigration judge failed to notify Silvestre-Gregorio that voluntary departure was an available form of relief, the immigration judge failed to follow 8 C.F.R. § 1240.11(a)(2), which requires the judge to inform the alien of "apparent eligibility" for relief. However, post-

conclusion voluntary relief was not available because he had not been in the United States for at least one year. *See* 8 U.S.C. § 1229c(b)(1)(A). And, even if he were eligible for pre-conclusion voluntary departure, Silvestre-Gregorio acknowledges that our precedent forecloses further consideration of his argument. "We have previously announced that an individual 'has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation.'" *Estrada*, 876 F.3d at 887 (quoting *Ashki*, 233 F.3d at 921); *see id*. at 888 ("We acknowledge the circuit split on this question, with the majority of our sister circuits likewise holding that an alien has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief.") (collecting cases). Thus, we must reject Silvestre-Gregorio's claim.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.