NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0142n.06

No. 21-5948

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 22, 2023
DEBORAH S. HUNT, Clerk

COREY TARVIN,

      Plaintiff-Appellant,

v.

CHERRY LINDAMOOD, et al.

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

OPINION

---

Before: COLE, NALBANDIAN, and READLER, Circuit Judges.

NALBANDIAN, J., delivered the opinion of the court in which COLE, J., joined, and READLER, J., joined in the judgment. COLE, J. (pg. 9), delivered a separate concurring opinion. READLER, J. (pp. 10–13), delivered a separate opinion concurring in the judgment only.

**NALBANDIAN, Circuit Judge.** Corey Tarvin is a legally blind, pro se inmate who filed suit in federal court after he was stabbed in a Tennessee prison. The district court dismissed his case for failure to prosecute under Federal Rule of Civil Procedure 41(b). Because the district court's order did not account for Tarvin's several filings on the docket related to his inability to respond, we vacate and remand for further consideration.

**I.**

In March 2018, Corey Tarvin filed a pro se complaint against the Tennessee Department of Corrections, prison officers, and CoreCivic (a private company that runs the relevant prison) in federal court after a group of gang members attacked and stabbed him in October 2017. He alleged violations of his First, Eighth, and Fourteenth Amendment rights. He explained to the court in a

couple of handwritten letters that he was legally blind and had difficulty participating in the litigation process. After Tarvin survived screening under the Prison Litigation Reform Act, the district court appointed counsel to represent him in February 2019. Defendants moved to dismiss, but the district court allowed Tarvin, represented by counsel, to move forward on several of his claims.

Soon after, Tarvin asked the court to replace his appointed counsel because of a lack of results and responsiveness. So Tarvin's counsel moved to withdraw. And in March 2021, the district court granted that motion but declined to appoint substitute counsel because no substitute counsel was available. On June 7, 2021,[1] CoreCivic sent Tarvin a set of requests for admission and a second set of interrogatories. CoreCivic sent Tarvin a deficiency letter on July 20. Two days later, Tarvin's mother filed a letter explaining that Tarvin's correctional facility did not "mail his mail" and that Tarvin had not received any "paperwork on this case." (R. 132, Mother's Letter, p. 1.) On August 10, CoreCivic moved to compel Tarvin's response to the second set of interrogatories. A magistrate judge granted that motion and gave Tarvin until August 27 to respond to the second set of interrogatories.[2]

On August 25, two days before the magistrate judge's deadline, Tarvin filed a letter with the court, dated August 20, explaining that he was "legally blind" and could not "see to read any small newspaper type print or cursive" and that "CoreCivic and the courts ha[d] [his] medical

---

[1] On December 28, 2020, the Tennessee Department of Corrections ("TDOC") sent Tarvin a first set of interrogatories. TDOC says that it received his responses.

[2] In a letter dated August 12—the same date the magistrate judge's order came down—Tarvin notified the court that he had been transferred to another facility where another inmate had been assigned to help him. He explained that even though his access to the library, notary, and mailroom was limited, he "immediately start[ed] responding to [his] legal mail." (R. 143, Motion to Amend, p. 3.) But he explained that all the limitations in the prison prevented him from "get[ting] things done in a timely manner." (*Id.*) That letter was not docketed until September 17.

records and are aware of this." (R. 138, Tarvin Filed Accommodation Request #1, p. 1.) He said that "[w]ithout a qualified and willing helper, [he was] unable to respond to anyone or anything." (*Id.*) He explained that the helpers he had had in the past "didn't put [his] mail in the mailbox" or "addressed the envelope with the wrong address[.]" (*Id.* at 3.) He also said that he had spoken to the court clerk, who explained "that the defendants haven't received the response that I mailed them." (*Id.* at 3.) He also said that he had tried to call CoreCivic's attorney Mr. Tilly but that Mr. Tilly had not answered.

On August 31, four days after the magistrate judge's deadline, Tarvin filed another letter with the court, dated August 24. He reiterated that he was "legally blind" and couldn't "comprehend what's actually taking place." (R. 140, Tarvin Filed Accommodation Request #2, p. 1.) He said that he wasn't "sure of what's all been filed or amended." (*Id.*) He asked if he could participate in discovery "verbally . . . instead of on paper" due to his "visual impairment." (*Id.* at 3.) He explained that he was "not avoiding the participation in this procedure" but that he was "unable to participate without any help, and, or assistance, due to [him] being visually disable[d]." (*Id.* at 4.)

On September 10, CoreCivic moved to dismiss for lack of prosecution under Rule 41(b). Tarvin did not respond to this motion but filed several other motions with the court between September 10 and September 17, explaining that inmates had been instructed not to help him.

And on September 30, the district court dismissed Tarvin's case without prejudice for failure to prosecute under Rule 41(b). And in doing so, the court applied the four factors relevant to the Rule 41(b) analysis. Tarvin timely appealed. In his notice of appeal, Tarvin explained that he didn't even know about the dismissal until he called the clerk's office. And he said that he had replied to CoreCivic's discovery but that CoreCivic hadn't received his discovery responses, even

though he sent them at the same time that he mailed TDOC its responses, which TDOC had received, *see supra* n.2. Further, he said that CoreCivic's attorney refused Tarvin's offers to conduct discovery verbally over the phone. Now, again represented by counsel, he asks us to reverse the district court's dismissal as improper under Rule 41(b).

## II.

Rule 41(b) allows a district court to dismiss a case "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order[.]" Fed. R. Civ. P. 41(b). And we give the district court "substantial discretion" in applying Rule 41(b), reviewing only for abuse of discretion. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citation omitted).

A district court abuses its discretion when it "fails to explain its reasoning adequately or to consider the competing arguments of the parties," *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 883 (6th Cir. 2016) (citation omitted), or when we are left with a "definite and firm conviction that [it] committed a clear error of judgment," *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (citation omitted).

In a Rule 41(b) analysis, the court evaluates four factors: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Knoll*, 176 F.3d at 363 (citation omitted).

And we've said that "dismissal of an action for an attorney's failure to comply [with a court order] is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.'" *Buck v. U.S. Dep't of Agric.*, 960 F.2d 603, 608 (6th Cir. 1992) (quoting *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir.

1978)). "Absent this showing, an order of dismissal is an abuse of discretion; the court is limited to lesser sanctions designed to achieve compliance[.]" *Id.* (citing *Silas*, 586 F.2d at 385). Although "not without dissent, panels of this court have continued to apply [this] formula in cases where a party's attorney fails to appear for a conference or proceeding, or fails to comply with an order." *Id.* Bottom line, the first factor—a finding of bad faith, willfulness, or fault—deserves the most weight in our review.

And a party who seeks to avoid the sanction of dismissal "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (citation omitted).

First factor first. The district court found that Tarvin acted with willfulness and fault (though not bad faith) because he did not comply with the magistrate judge's order to respond to CoreCivic's interrogatories within the August 27 deadline. The district court explained:

> A plaintiff's actions demonstrate bad faith, willfulness, or fault where they "display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [plaintiff's] conduct on those proceedings." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005). Even if Plaintiff's failure to respond to the CoreCivic Defendants' discovery and comply with the Court's order to compel were not motivated by bad faith, Plaintiff's inaction still reflects "willfulness and fault" for purposes of Rule 41(b). *Hatcher v. Dennis*, 2018 WL 1586235, at *1 (W.D. Tenn. Mar. 30, 2018) ("[e]ven where there is no clear evidence of bad faith, failure to respond to a show cause order is indicative of willfulness and fault"). This factor supports dismissal.

(R. 149, District Court Order, pp. 3–4.)

So the crux of the district court's reasoning is that failure to respond to a show-cause order is per se evidence of willfulness and fault. Since the district court focused on willfulness and fault rather than bad faith, we'll do the same. And we think all failures to respond aren't created equally. For instance, if a litigant fails to respond solely because she doesn't want to answer hard discovery questions, that's a display of willfulness or fault. *See Bryant v. United States ex rel. U.S. Postal*

*Serv.*, 166 F. App'x 207, 211 (6th Cir. 2006) ("[P]laintiffs must do as much as they can, and certainly more than they did here, to provide defendants with all relevant discoverable information.") On the other hand, when a litigant demonstrates that he can't comply with a discovery request, we don't stick that inability in the bad faith, willfulness, or fault category. *See Reyes*, 307 F.3d at 458.

We aren't sure whether the district court thought Tarvin was able to comply with discovery requests because the district court didn't address Tarvin's letters at all. Nor can we tell what the district court thought of Tarvin's suggestion that he had tried to respond to CoreCivic's request by mail but that perhaps the qualified helpers had mishandled his outgoing mail. And given his limitations, Tarvin suggested that he should be able to respond to the requests orally to rectify the problem (presumably he doesn't have an extra copy of the alleged written responses lying around somewhere). (*See* Reply Br. Br. at 6–7 (explaining that requiring Tarvin to submit a copy "assumes the availability of the very resources Mr. Tarvin" didn't have).)

In short, the district court didn't address Tarvin's statements that he had previously sent discovery responses in the mail with the help of a qualified aid (that was later unavailable) and that he was now seeking to respond orally. And because the district court is best situated to evaluate the facts concerning Tarvin's ability to respond to discovery, we think the best course is to vacate and remand.[3]

---

[3] To be fair to the district court, Tarvin's handwritten letters are not a model of clarity. The filings are not responsive to the magistrate judge's order, nor were they filed as responses to discovery. Plus, Tarvin bears some responsibility for his own predicament because he effectively discharged his appointed attorney—who by all accounts had performed admirably. That said, given Tarvin's statements, this case—at least on this record—doesn't present the type of conduct that typically leads to dismissal.

As for the other three factors, it doesn't look like the district court abused its discretion. On the second factor, failure to respond to discovery requests leads to the "waste [of] time, money, and effort" on the part of the requesting party, which can constitute prejudice. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). On the third factor, the magistrate judge warned in his order granting the motion to compel discovery that failure to comply with CoreCivic's discovery request could lead to dismissal of Tarvin's case. And that's probably sufficient to satisfy notice under the third factor. *See Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 742 (6th Cir. 2008). And on the fourth factor, although the statute of limitations had run, dismissal without prejudice is a lesser sanction than dismissal with prejudice in light of Tennessee's savings statute.[4] *See Moore v. Fields*, 464 F.2d 549, 550 (6th Cir. 1972). The parties to the appeal now appear to agree that the savings statute applies. And even if Tennessee's savings statute didn't apply, we've explained that although dismissal without prejudice might be "as harsh a remedy" as dismissal with prejudice when the statute of limitations has run, we've declined to consider it an abuse of discretion for a district court to dismiss without prejudice simply because the claim would now be time-barred. *In re Love*, 3 F. App'x 497, 498 (6th Cir. 2001) (collecting cases).

---

[4] Tennessee's savings statute provides as follows:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. Actions originally commenced in general sessions court and subsequently recommenced pursuant to this section in circuit or chancery court shall not be subject to the monetary jurisdictional limit originally imposed in the general sessions court.

Tenn. Code Ann. § 28-1-105(a).

Nevertheless, because the first factor carries so much weight in the Rule 41(b) analysis, we vacate the district court's judgment and remand so that the district court may consider Tarvin's filings discussing his inability to comply with CoreCivic's discovery request. In thinking about Rule 41(b) dismissal again, the district court can reevaluate the other three factors in light of any new evidence.

**VACATED** and **REMANDED**.

**COLE, Circuit Judge, concurring.** I express no opinion on the remaining three factors, and leave that analysis to the district court upon remand.

**CHAD A. READLER, Circuit Judge, concurring in the judgment.** If Corey Tarvin's handling of this case exasperated the district court, it would be easy to see why. Upon receiving Tarvin's complaint, the district court recognized that Tarvin, who is legally blind and serving a life sentence, might have trouble litigating his case pro se. Reading documents, preparing responses, and understanding court rules would all seemingly be a challenge for Tarvin. Although it was not required to do so, the district court decided to help Tarvin in prosecuting his case: it appointed counsel to represent Tarvin. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 853 (6th Cir. 2020). And the court was especially generous in doing so. It appointed a partner at a well-equipped Nashville law firm.

For over two years, counsel steered Tarvin's case through the channels of litigation. She moved for expedited relief, a motion the district court granted in part. She navigated the case past defendants' motion to dismiss. And, at Tarvin's request, she successfully sought to amend Tarvin's complaint—not once, but twice. Not a single rule nor deadline was neglected along the way.

Yet counsel's efforts apparently were not enough for Tarvin. With his mother's assistance, Tarvin filed multiple complaints against his counsel with the Board of Professional Responsibility of the Tennessee Supreme Court. He also complained to the district court. In his mother's words, Tarvin "needed a real lawyer[,] not [a] public defender[.]" Counsel, Tarvin leveled, had produced "only negative vibes" and "negative results." Tarvin even went so far as to accuse counsel and the district court of "conspir[ing]" to deny him legal assistance.

Unsurprisingly, Tarvin's attorney moved to withdraw. She explained that despite her two years of "efforts (which include[d] multiple telephone calls and texts per week—often during the evenings and weekends), [Tarvin] and his mother continue[d] to file complaints" against her.

10

(Neither the district court nor the Board of Professional Responsibility, it bears noting, has ever found grounds to issue her any kind of reprimand.) The district court granted counsel's motion. In so doing, it noted that the Clerk of Court was unable to obtain substitute counsel to represent Tarvin. Accordingly, the court advised Tarvin that he was expected to represent himself for the duration of the litigation if he was otherwise unable to retain an attorney.

As the district court seemingly foresaw at the case's inception, Tarvin proved unable to captain his own ship. He missed the deadline to respond to CoreCivic's interrogatories. And he subsequently missed the deadline set by the district court in granting CoreCivic's motion to compel. Tarvin was not always neglectful of his case. But when he was engaged in the matter, most of his efforts were dedicated to preparing largely frivolous submissions to the district court. Those filings included a letter alleging that CoreCivic and the Tennessee Department of Correction were conspiring to have him killed; a motion to amend the complaint (a third time); a letter stating that he was transferred to a different facility after he complained about fentanyl being planted in his food; and a motion to establish a conflict of interest because his current facility was in the TDOC Commissioner's hometown.

Noting Tarvin's failures, CoreCivic moved to involuntarily dismiss the case in accordance with Federal Rule of Civil Procedure 41(b). As things stood, the district court had few options to choose from. Dismissal is a significant penalty. Yet it is hard to imagine a lesser sanction that would have course-corrected the matter. *See Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997) (explaining how a district court's consideration of lesser sanctions is a factor in appellate review). As experience had demonstrated, Tarvin was unable to competently litigate his case acting pro se. During the time Tarvin was represented by appointed counsel, the case proceeded apace. But once Tarvin effectively fired his counsel, his case veered well off track. His actions,

which fluctuated between frivolous filings and missing deadlines, unnecessarily burdened the district court in overseeing Tarvin's case. Allowing him to continue pro se would only prolong an already prolonged dispute, likely without a favorable resolution for Tarvin, given his shortcomings as a pro se litigant. So the district court granted the motion and dismissed the case. But it did so without prejudice, allowing Tarvin to find counsel and refile his case, if he so chose.

Ordinarily, dismissing a case in this posture would not amount to an abuse of discretion. *See Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Tarvin's conduct reflected aspects of willfulness, bad faith, and fault, the chief considerations in determining whether dismissal under Rule 41(b) is appropriate. *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citation omitted); Majority Op. at 5. To justify dismissal, we look for conduct that is "perverse in resisting authority" or "stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704–05 (6th Cir. 2013) (cleaned up). Tarvin's conduct—failing to respond to a discovery request and violating a court order while flooding the court with frivolous motions—satisfies that standard. *See Harmon*, 110 F.3d at 368. As those actions demonstrate, Tarvin was "inexcusably unprepared to prosecute the case," justifying dismissal. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 364 (6th Cir. 1999).

True, we customarily are more forgiving of misdeeds committed by pro se litigants. And there are good reasons for doing so. *See Jourdan*, 951 F.2d at 110. But "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citation omitted). One natural limit is in instances where the litigant, like Tarvin, appeared pro se only because he functionally fired his court-appointed attorney. Viewed in that light, Tarvin's pro se status should no longer be "accorded special consideration." *See Jourdan*, 951 F.2d at 110 (upholding a Rule 41(b) dismissal against a pro se litigant); *see also Steward v. City of Jackson*, 8 F. App'x 294, 296–97 (6th Cir. 2001) (same). At day's end, Tarvin simply faced the

"consequence" of his "decision to proceed pro se" when the district court dismissed his case. *Cf. Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir. 2008).

For these reasons, a compelling case can be made for dismissal. Yet while these considerations likely drove the district court's decision, the district court did not articulate as much. For instance, the district court did not explain whether Tarvin's rebuke of counsel animated the court's conclusions. Nor did the court articulate the frivolous nature of Tarvin's filings. On the other side of the scale, the district court did not weigh the considerations that might have counseled against dismissal. In the absence of such findings, I concur in today's judgment. But with the benefit of a more fulsome order, one would be hard-pressed to do the same.